UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| CALEB C. VIDRINE | : | DOCKET NO. 2:07-cv-1350 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits claimed under §§ 216(i) and 223 of the Social Security Act (Sections 416 and 423 of Title 42 of the U.S. Code). This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## BACKGROUND

Plaintiff in this case, Caleb C. Vidrine, filed an application for disability insurance benefits on April 30, 2004, alleging disability beginning December 17, 2004.[1] Transcript at 19. On initial determination, plaintiff's claim was denied. *Id.* As a result, plaintiff sought an administrative hearing. *Id.* A hearing was held on June 2, 2006. *Id.* At the hearing, plaintiff testified with the assistance of a non-attorney representative. *Id.* Norman C. Hooge, Ph.D. also appeared and testified as a vocational expert. *Id.*

---

[1] On December 17, 2004, plaintiff attained 18 years of age. Transcript at 19. A separate decision of the Social Security Administration, not before this court, addresses the issue of plaintiff's disability prior to age 18. *Id.*

On August 25, 2006, the administrative law judge (ALJ) rendered a decision finding that plaintiff is not disabled within the meaning of the Social Security Act. *Id.* at 19-24. Plaintiff requested review of the ALJ's decision before the appeals council, but the council denied the request on March 29, 2007. *Id.* at 3-5. Thus, plaintiff filed the above-captioned civil action seeking this court's review.

## **STANDARD OF REVIEW**

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but

may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## DISCUSSION

The burden of proving that he or she suffers from a disability[2] rests with the claimant. *Perez*, 415 F.3d at 461. The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[3]; (3) whether the claimant's impairment

---

[2] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

[3] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1520, 404.1523. A determination that

3

> meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; Social Security Ruling 96-8p. The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations. 20

---

an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled. *Id.*

C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p. The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff is not disabled at step five of the sequential analysis. Transcript at 23-24. Specifically, at step two of the analysis, the ALJ found that plaintiff suffers from the severe impairment of mental retardation. *Id.* at 21-22. The ALJ determined at step three that plaintiff's severe impairment does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 22. Accordingly, the ALJ considered plaintiff's RFC and determined that he has "no physical restrictions or limitations." *Id.* The ALJ determined that plaintiff does not retain the capacity to perform "detailed or complex work (1-2 step instruction, under general supervision)"; to perform "work at a rapid or assembly-line pace." *Id.* Finally, the ALJ determined that plaintiff should have "only occasional interaction with the general public." *Id.* The ALJ then determined that, "[t]he claimant's ability to perform work at all exertional levels has been compromised by non-exertional limitations." *Id.* at 23-24. Thus, the ALJ consulted with a vocational expert to determine whether jobs exist in the national economy for an individual with the plaintiff's age, education, work experience, and RFC.[4] The vocational expert testified:

---

[4] When the ALJ determines that a plaintiff has no non-exertional limitations, he or she may use the Medical Vocational Guidelines to determine whether a finding of disabled or not-disabled is appropriate. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). When non-exertional limitations exist, it is appropriate for the ALJ to consult with a vocational expert. *Id.*

> [G]iven all of these factors the individual would be able to perform the requirements of representative occupations such as custodial work, which is light to medium in exertion and unskilled, there are 25,000 in the regional economy and 1,000,000 in the national economy; kitchen helper, which is medium in exertion and unskilled, there are 20,000 in the regional economy and 700,000 in the national economy; and, yard worker, which is medium in exertion and unskilled, there are 5,000 in the regional economy and 200,000 in the national economy.

*Id.* at 24. Concerning the above, the ALJ found that "the vocational expert's testimony is consistent with the Dictionary of Occupational Titles. *Id.* The ALJ continued:

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.[5]

*Id.*

Plaintiff makes two arguments that substantial evidence does not support the conclusions of the ALJ. Plaintiff asserts that his mental impairment meets the criteria of 20 C.F.R. 404, Subpart P, Appendix 1, § 12.05. Doc. 14, at 5-6. Thus, according to plaintiff, the ALJ should have determined that he was entitled to a finding of disability at step three of the sequential evaluation process. *Id.* Additionally, plaintiff asserts that the ALJ improperly ignored the vocational expert's testimony. *Id.* at 3-5. According to plaintiff, the ALJ should have found plaintiff disabled at step five of the sequential process. *Id.* Specifically, the ALJ asked the vocational expert whether jobs exist for plaintiff if all testimony was determined fully true and credible. *Id.* at 4. Plaintiff points

---

[5] The Medical-Vocational Guidelines appear at 20 C.F.R. 404, Subpart P, Appendix 2.

out that the vocational expert answered this question in the negative. *Id.* (citing Transcript at 216).

The Commissioner, in response to plaintiff's arguments, asserts that the ALJ properly found plaintiff not disabled at step three of the sequential evaluation process. Doc. 15, at 3. The Commissioner points out that no evidence presented by plaintiff meets the criteria set out in § 12.05 of Appendix 1. *Id.* As to plaintiff's second argument, the Commissioner notes that the ALJ did not find that all the evidence presented was fully true and credible. *Id*. at 7 (citing Transcript at 23). The Commissioner notes that the ALJ also asked the vocational expert whether plaintiff could perform any work based on the RFC assigned him and that this testimony formed the basis of the ALJ's ultimate decision. *Id.*

### A. Whether Substantial Evidence Supports the ALJ's Decision that Plaintiff Is Not Disabled at Step Three

Plaintiff argues that he meets the criteria to be considered disabled due to mental retardation at step three of the sequential evaluation process. According to Appendix 1, § 12.05: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." To support a finding of disability due to mental retardation at step three, a plaintiff must show:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or

7

> B. A valid verbal, performance, or full scale IQ of 59 or less; or
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05.

Plaintiff argues that he meets the criteria of § 12.05(A), (C), and (D). Specifically, plaintiff asserts that his "full scale IQ score of 68 along with his learning disability could produce *per se* entitlement" under these subsections. Doc. 14, at 5. The court finds no support for plaintiff's assertion.

First, no evidence supports that plaintiff meets the criteria of § 12.05(A). Plaintiff cites no evidence showing he is incapable of caring for his personal needs or incapable of following instructions such that his intelligence cannot be measured. *See* Doc. 14. Indeed, plaintiff acknowledges in his brief that he did indeed complete such testing. *Id.* at 2-3. Additionally, the evaluation conducted by Dr. Dilks found that plaintiff could perform the tasks listed in Appendix A. Transcript at 168-69. It is plaintiff's burden to provide medical findings that support the criteria of a listed impairment under Appendix 1. *Sullivan v. Zebley*, 493 U.S. 521, 531-32, 110 S.Ct. 885, 891-92, 167 L. Ed. 2d 967 (1990); *Selbers v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). He has failed to do so.

Thus, substantial evidence supported the ALJ's finding that plaintiff is not disabled *per se* under § 12.05(A).

Substantial evidence also supports the ALJ's conclusion that plaintiff does not qualify for disability *per se* under § 12.05(C). Although plaintiff has an IQ score within the 60 to 70 range, he lacks any aggravating factor qualifying him under subsection C. Transcript at 21-22, 168-69. The ALJ did not find any impairment other than mental retardation present. *Id.* at 21. Plaintiff does not allege to this court that any physical impairment is present, and the record shows that the ALJ properly considered the medical evidence to find none present. *See* Doc. 14; Transcript at 21-22. Plaintiff alleges that the mental impairment of a learning disability is present [Doc. 14, at 5], but cites no evidence in the record to support that he has a learning disability separate from his mild mental retardation. Because mental retardation is the only disability diagnosed for plaintiff by examining physicians [Transcript at 21-22, 160-81], he does not qualify for disability *per se* under § 12.05(C).

Finally, substantial evidence supports the ALJ's conclusion that plaintiff does not qualify for disability *per se* under § 12.05(D). Again, plaintiff meets the IQ requirement for a disability under this subsection. However, plaintiff does not meet the other requirements of subsection D. The ALJ found that plaintiff's has only "mild" (as opposed to "marked") restrictions in activities of daily living; only "mild" (as opposed to "marked") difficulties in maintaining social functioning; only "moderate" (as opposed to "marked") difficulties in maintaining concentration persistence and pace; and no episodes of decompensation. *Id.* at 22.

Plaintiff asserts that Dr. McKellar[6] examined him and concluded that two "marked" impairments and one "extreme" impairment were present. Doc. 14, at 3-4. Plaintiff further asserts that Dr. McKellar opined that his condition functionally equaled a listing. *Id.* at 3. Plaintiff, however, mischaracterizes the record. First, Dr. McKellar did not examine plaintiff, but instead only reviewed plaintiff's medical records and completed a childhood disability assessment form for plaintiff's case file. Transcript at 170-75. Second, Dr. McKellar's childhood disability report shows only one "marked" impairment relating to plaintiff's IQ and "no limitation" in the other five domains. *Id.* at 172, 174. No evidence appears in the record to support plaintiff's assertion that Dr. McKellar found two "marked" impairments and one "extreme" impairment or that his condition functionally equaled a listing. *Id.* at 170-75. Further, plaintiff's disability prior to the age of 18 is not at issue in this case; the reviewed decision addresses disability since December 17, 2004, the date plaintiff attained 18 years of age. *Id.* at 19.

### B. Whether Substantial Evidence Supports the ALJ's Decision that Plaintiff Is Not Disabled at Step Five

Plaintiff also argues that the ALJ erroneously concluded that he is not disabled at step five of the sequential evaluation process. Specifically, plaintiff argues that the ALJ ignored the vocational expert's testimony and came to a contradictory opinion. Doc. 14, at 3. According to the record, the ALJ asked the vocational expert two questions. As plaintiff notes, the ALJ did ask the vocational expert whether, assuming all testimony as to plaintiff's limitations to be true, any jobs existed for him. Transcript at 216. The ALJ responded to this question in the negative. *Id.* The ALJ also asked the witness whether

---

[6] Plaintiff erroneously refers to Dr. McKellar as Dr. McRellar throughout his brief. Doc. 14.

an individual of plaintiff's age, education, work experience, and assigned RFC could perform any jobs. *Id.* at 215. The vocational expert testified that such an individual could perform the jobs of kitchen helper and yard worker, positions existing in the tens of thousands in the regional economy. *Id.* at 215-16.

The ALJ was not bound to find all testimony presented by plaintiff to be credible in light of the objective medical evidence. *Brown v. Apfel*, 192 F.3d 492, 500 (1999). The ALJ's decision shows that after careful consideration of the record, he concluded that "to the extent that the claimant alleges an inability to perform **any** significant work activities on a sustained basis, his allegations and subjective complaints are found not to be fully credible when considered in light of the entirety of the evidence of record." Transcript at 23 (emphasis in original). Because the ALJ did not find all the testimony presented by plaintiff entirely credible, he was not bound by the vocational expert's response to a hypothetical making that assumption. Instead, the ALJ relied on the vocational expert's response to the hypothetical question that corresponded to the RFC that he assessed for plaintiff. Transcript at 23-24. This is what the ALJ was required to do. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

For all of these reasons, substantial evidence supports the ALJ's determination that plaintiff does not meet the requirements for social security disability benefits. It is therefore RECOMMENDED that the Commissioner's unfavorable determination be AFFIRMED. Accordingly, it is RECOMMENDED that plaintiff's Complaint be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections

with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana September 19, 2008.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE